IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEALE AQUACULTURE FARM, INC., | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-22-1181 |
| LIBERTY MUTUAL MID-ATLANTIC INSURANCE COMPANY, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff Deale Aquaculture Farm, Inc. ("Deale") filed suit in the Circuit Court for Anne Arundel County against Defendants Liberty Mutual Mid-Atlantic Insurance Company ("Liberty Mid-Atlantic"), Liberty Mutual Insurance Company ("Liberty Mutual," and collectively with Liberty Mid-Atlantic, the "Liberty Defendants"), and Ohio Security Insurance Company ("Ohio Security"), bringing a breach of contract claim arising from Defendants' alleged failure to cover a property damage claim. (*See* Compl., ECF No. 5.) On May 17, 2022, Defendants removed the case to this Court and, two days later, Ohio Security filed an Answer (ECF No. 8) and the Liberty Defendants filed a Motion to Dismiss in which they argued that they lack a contractual relationship with Deale. (*See* ECF Nos. 1, 9.) The Liberty Defendants' Motion to Dismiss is now ripe for consideration and no hearing is required. See Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Court will grant the Liberty Defendants' Motion to Dismiss (ECF No. 9).

1

## I.  *Background*[1]

On or about April 12, 2019, Deale—which operates a wholesale seafood distribution business and is allegedly "insured under one or more insurance policies issued by" Defendants[2]—suffered sudden damage to the roof of a single-story agricultural building in which it operates. (Compl. ¶¶ 8–10.) Deale alleges that the roof's partial collapse resulted from a "severe windstorm" and that the windstorm "is the only plausible explanation for the observed damage." (*Id.* ¶¶ 10–11.) When Deale "timely tendered" an insurance claim to Defendants to cover the property damage it sustained, Defendants declined. (*Id.* ¶¶ 11–12.) In a June 7, 2019 letter (the "June 2019 Letter") denying coverage, Defendants argued that a provision in Deale's insurance policy applied, excluding from coverage certain incidents

> relating to wear and tear, rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself, and continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

(*Id.* ¶ 19 (alterations and internal quotations omitted).)

Deale disagrees that this provision applies, and alleges that the insurance policy covered the relevant property damage and that Defendants "made material misrepresentations" about the policy in order to "conceal its duty to indemnify Deale[.]" (*Id.* ¶ 17.) Defendants did not change their position after Deale, through counsel, sent them a letter dated August 16, 2021 (the "August

---

[1] At the motion to dismiss stage, the "well-pled allegations of the complaint" are accepted as true and "the facts and reasonable inferences derived therefrom" are construed "in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citing *Little v. Fed. Bureau of Inv.*, 1 F.3d 255, 256 (4th Cir. 1993)).

[2] The Complaint refers to all Defendants "jointly and interchangeably as 'Liberty.'" (Compl. ¶ 5.) It is therefore unclear from the Complaint alone whether Deale alleges that some or all of the Defendants declined Deale's insurance claim. Because Deale wishes to maintain the present action against all Defendants, (*see generally* Pl.'s Opp'n Mot. Dismiss, ECF No. 18), the Court understands Deale's position to be that all three Defendants have a contractual relationship with Deale via the insurance policy in dispute. For this reason, the Court refers to all Defendants as having issued the policy, despite the fact that the Liberty Defendants' Motion to Dismiss centers around this very issue.

2

2021 Letter") disputing the decision to decline coverage. (*Id.* ¶¶ 22–23.) Deale avers that Defendants "commissioned an engineer to inspect the damaged building" to "rationalize" their declination of coverage. (*Id.* ¶ 24.) Deale disputes the conclusions contained in the resulting report and filed a breach of contract claim in the Circuit Court for Anne Arundel County. (*Id.* ¶¶ 24–29); *see Deale Aquaculture Farm, Inc. v. Liberty Mutual Mid-Atlantic Ins. Co.*, Civ. No. 22-0623 (Cir. Ct. Anne Arundel Cnty. filed Apr. 11, 2022). Defendants removed the case to this Court. (ECF No. 1.)

## *II.    Legal Standard*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must plead enough factual allegations 'to state a claim to relief that is plausible on its face.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage, the Court "accept[s] as true all of the factual allegations contained in the complaint," and "draw[s] all reasonable inferences in favor of the plaintiff." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)). That said, "[b]are legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citing *Ashcroft*, 556 U.S. at 679).

The Court may consider documents attached to a motion to dismiss "so long as they are integral to the complaint and authentic[.]" *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Because it is discussed in the Complaint and because its authenticity is not in

dispute, the Court will consider the insurance policy.[3] (*See* ECF Nos. 8-1, 18-1); *see also 316 Charles, LLC v. Liberty Mutual Ins. Co.*, Civ. No. DKC-21-0787, 2022 WL 228010, at *4 (D. Md. Jan. 26, 2022) (considering, at the motion to dismiss stage, attached "insurance contract, letters of denial, [plaintiff's] request for reconsideration, and engineer's report").

## III.  *Analysis*

The Liberty Defendants argue that they are not parties to the insurance contract and cite a single case in support of this proposition. *See Cecilia Schwaber Trust Two v. Hartford Acc. and Indem. Co.*, 437 F. Supp. 2d 485, 489 (D. Md. 2006); (*see generally* ECF No. 9.) Citing no legal authority, Deale responds that it is premature for the Court to dismiss the Liberty Defendants because (1) the terms of the policy are ambiguous; (2) the Liberty Defendants' conduct suggests the existence of a contractual relationship; (3) the Liberty Defendants fail to offer an affidavit or other factual support for their position;[4] and (4) the Liberty Defendants do not "support the tacit assumption that only the issuance of a policy can give rise to contractual obligation." (ECF No. 18 ¶ 2.)

Applying Maryland contract law principles,[5] it is clear that the policy identifies Ohio Security—and not the Liberty Defendants—as its issuer. "To prevail in an action for breach of

---

[3] That this document is attached to Ohio Security's Answer, as opposed to the Liberty Defendants' Motion to Dismiss, does not affect the Court's conclusion in this regard. *See Ford v. Hartford Life & Acc. Ins. Co.*, Civ. No. 08-0281, 2009 WL 963594, at *2 (W.D.N.C. Apr. 8, 2009) (considering, at the motion to dismiss stage, an insurance policy and termination letter attached to defendant's answer because they formed the basis of plaintiff's claims).

[4] The Liberty Defendants attached such an affidavit to their Reply. (*See* Hager Aff., ECF No. 21-1 (affidavit of David Hager, putative policy retrieval specialist for Liberty Mutual Insurance Company, stating that "Liberty Mutual Mid-Atlantic Insurance Company, Liberty Mutual Insurance Company, and Ohio Security Insurance Company are separate, domestic underwriting companies and members of the Liberty Mutual Group.").) Because Deale has not been afforded an opportunity to respond to this affidavit, the Court does not consider it.

[5] In their briefing, the parties do not address whether Maryland law governs this question. "In insurance contract disputes, Maryland follows the principle of *lex loci contractus*, which applies the law of the jurisdiction where the contract was made." *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013) (citing *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992)). "[A] contract is made where 'the last act is performed which makes the agreement a binding contract. Typically, this is where the policy is delivered and premiums are paid.'" *Perini/Tompkins*, 738 F.3d at 100 (citing *Sting Sec., Inc. v. First Mercury Syndicate, Inc.*, 791 F. Supp. 555, 558 (D. Md. 1992)). Given that Deale is a Maryland corporation and maintains its principal place of business in Maryland,

4

contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank N.A.*, 776 A.2d 645, 651 (Md. 2001). The "most important factor" in determining whether parties have manifested an intent to be bound by the terms of a contract "is the language of the agreement." *Cochran v. Norkunas*, 919 A.2d 700, 709 (Md. 2007). Where an insurance contract unambiguously identifies the issuer of the policy, the court will not consider external indicia to divine the contract's meaning in that regard. *See Kurland v. ACE Am. Ins. Co.*, Civ. No. JKB-15-2668, 2017 WL 354254, at *2 (D. Md. Jan. 23, 2017). Here, the policy unambiguously identifies Ohio Security as the issuing entity. The policy lists "Ohio Security Insurance Company" as the issuing company, (ECF No. 8-1 at 25), and ten pages state that "[c]overage [i]s [p]rovided [i]n [ ] Ohio Security Insurance Company[.]" (*Id.* at 28–30, 32–38.)

The Court acknowledges that the many references to "Liberty Mutual" scattered throughout the policy may appear misleading. The "Notice of Change in Policy" page that identifies Ohio Security as the policy issuer also thanks the insured for "choosing Liberty Mutual Insurance." (*Id.* at 25.) Many other pages contain a "Liberty Mutual Insurance" logo at the top, while others contain a "Liberty Mutual Insurance" copyright mark. (*See, e.g., id.* at 2, 4.) The declarations page is signed by "Mark Touhey, Secretary" and "Paul Condrin, President," individuals who Deale warrants "appeared to be executives with Liberty Mutual."[6] (*See* ECF No. 18 at 2.) These references, however confusing they may be, are insufficient to create ambiguity as to the issuer of the policy. *See 316 Charles*, 2022 WL 228010, at *5 (rejecting nearly identical

---

(*see* Compl. ¶ 1), and absent allegations to the contrary, Maryland appears to be the state where the policy was delivered and premiums paid.

[6] Although the policy identifies Touhey and Condrin as "Secretary" and "President," and describes them as "authorized officers," it is not clear from the terms of the policy where these individuals are employed. (ECF No. 8-1 at 29.) Their places of employment are of less relevance than the impression left by the plain text of the page on which their names and signatures appear, which is that Touhey and Condrin were apparently authorized to sign the policy on behalf of Ohio Security. (*Id.* (stating, at the top of the page, "Coverage Is Provided In: Ohio Security Insurance Company").)

argument and finding that similar references to "Liberty Mutual" did not create ambiguity where policy also identified Ohio Security as its issuer). *But see Harris v. Durham Enters., Inc.*, Civ. No. JPG-20-0072, 2020 WL 3206047, at *3 (S.D. Ill. June 15, 2020) (declining to dismiss Liberty Mutual Insurance Company ("LMIC") where complaint "pled sufficient facts to plausibly tie LMIC to the insurance policy in issue" and found that the repeated appearances of the "mark 'Liberty Mutual Insurance' and the phrase 'Liberty Mutual Insurance Company'" were "sufficient to suggest LMIC may bear some responsibility for the obligations in the policy"). Because the plain language of the policy is "unambiguous," the Court does not consider the external evidence cited by Deale in opposition to the Liberty Defendants' Motion to Dismiss. *See Kurland*, 2017 WL 354254, at *2 (stating that such evidence is irrelevant where the "plain language of the policy" is clear); (ECF No. 18 at 2–3 (arguing that the June 2019 letter suggests that a claims adjuster affiliated with Liberty Mutual Insurance was involved in the decision to deny Deale coverage).

Nor will the Court infer the existence of a contract based on the Liberty Defendants' conduct. (*See* ECF No. 18 ¶ 2.) The Complaint does not allege facts explaining how or—even suggesting that—the Liberty Defendants adopted Ohio Security's contract obligations. *See 316 Charles*, 2022 WL 228010, at *5 (citing *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 333–34 (D. Md. Dec. 13, 2012)). Because the policy clearly states that Ohio Security is its issuer, the Court will grant the Liberty Defendants' Motion to Dismiss (ECF No. 9).

## IV. *Conclusion*

For the foregoing reasons, a separate Order shall issue granting the Liberty Defendants' Motion to Dismiss (ECF No. 9).

DATED this 17 day of August, 2022.

BY THE COURT:

_James K. Bredar_
James K. Bredar
Chief Judge
